# UNITED STATES DISTRICT COURT
## Northern District of Florida
### Pensacola Division

JEFF SIREN AND SIDNEY SIREN
    Plaintiffs,

CA Number: 3:18-cv-1339

v.

OCWEN LOAN SERVICING, LLC,
    Defendant

Jury Demanded

_____/

## PLAINTIFFS' ORIGINAL COMPLAINT AND JURY DEMAND

1. Jeff Siren ("**J. Siren**") and Sidney Siren ("**S. Siren**") (J. Siren and S. Siren individually each a "**Plaintiff**" and collectively "**Plaintiffs**") bring this action to enforce the consumer-privacy provisions of the Telephone Consumer Protection Act ("**TCPA**"), a federal statute enacted in 1991 in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740, 745 (2012).

2. J. Siren was notified by the MDL class action administrator in *Snyder, et al., v. Ocwen Loan Servicing, LLC*, No. 1:14-cv-08461 (N.D. Ill.) (the "**Ocwen TCPA Class Action**") that he was identified as an individual who Defendant's records indicate was called on his cell phone by Defendant. The parties in the Ocwen TCPA Class Action

entered into a court-approved settlement agreement.  J. Siren opted-out of that settlement agreement.

3. Plaintiffs now bring this individual action to recover on an individual basis.

4. "Voluminous consumer complaints about abuses of telephone technology – for example, computerized calls dispatched to private homes – prompted Congress to pass the TCPA."  *Id.* at 744.  In enacting the TCPA, Congress intended to give consumers a choice as to how creditors and telemarketers may call them.  Thus, and as applicable here, Section 227(b)(1)(A)(iii) of the TCPA specifically prohibits the making of "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service[.]"

5. The TCPA prohibits calls to a cell phone made with an auto dialer or with a prerecorded voice unless prior express consent is given.  Plaintiffs did not consented.

6. Ocwen Loan Servicing, LLC ("**Defendant**") called Plaintiffs' cell phones using an auto dialer and/or a pre-recorded voice.  Because Plaintiffs had not given consent to receive calls from Defendant, those calls violated the TCPA.

7. This is the exact scenario Congress attempted to prevent in enacting the TCPA. Plaintiffs now seek this Court's intervention and help in attempting to prohibit this unlawful conduct.

## Parties

8. At the time of receipt of a majority of the calls Plaintiffs were residents of Miramar Beach, Florida and lived in this District. They received calls in this District.

9. Defendant is a debt collector who services mortgage loans. Defendant regularly conducts business in Florida.

## Jurisdiction & Venue

10. The Court has federal question subject matter jurisdiction over these TCPA claims. *Mims v. Arrow Financial Services, LLC*, 132 S. Ct. 740 (2012).

11. Venue is proper before this Court under 28 U.S.C. § 1391(b)(1) and (2). Venue is proper in this District because some of the acts subject to this action were taken by Defendant in this District. Defendant is deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced and Defendant's contacts with this District are sufficient to subject it to personal jurisdiction.

## Article III Standing

12. Plaintiffs have Article III standing for their claims under the TCPA. *Spokeo, Inc., v. Thomas Robins,* 136 S. Ct. 1540 (2016).

13. Defendant's phone calls harmed Plaintiffs by causing the very harm that Congress sought to prevent—a "nuisance and invasion of privacy."

14. Plaintiffs were harmed by Defendant's actions of calling their cell phones in the following manners:

    a. Plaintiffs' privacy was invaded by Defendant;

      b.  Plaintiffs were harassed and abused by Defendant's telephone calls;

      c.  Defendant's calls were a nuisance to Plaintiffs;

      d.  Plaintiffs' phone was unavailable for other use while processing the illegal calls from Defendant;

      e.  Defendant illegally seized Plaintiffs' telephone lines while it made illegal calls to Plaintiffs' telephone;

      f.  Plaintiffs' telephone lines were occupied by multiple unauthorized calls from Defendant;

      g.  Defendant's seizure of Plaintiffs' telephone lines was intrusive; and

      h.  Plaintiffs were inconvenienced by Defendant's calls, by among other things, hearing the phone ring and having to check the calling party

15. Because all standing requirements of Article III of the U.S. Constitution have been met, Plaintiffs have standing to sue Defendant on the stated claims.

## The Telephone Consumer Protection Act

16.    Advances in telecommunications technology have provided benefits to American society. But those benefits are not cost-free; new technologies bring with them new ways to intrude upon individual privacy and waste the time and money of consumers. The 1980s and 90s brought an explosion of abuses of telephone and facsimile technology, including the use of auto-dialers to clog telephone lines with unwanted calls, "robocalls" with unsolicited or unwanted, prerecorded messages, and "junk faxes" that consume the recipients' paper and ink and interfere with the transmission of legitimate messages.

17. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

18. Through the TCPA, Congress outlawed telemarketing via unsolicited automated or pre-recorded telephone calls ("robocalls"), finding:

> [R]esidential telephone subscribers consider automated or prerecorded telephone calls, regardless of the content or the initiator of the message, to be a nuisance and an invasion of privacy.
>
> . . . .
>
> Banning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call[,] . . . is the only effective means of protecting telephone consumers from this nuisance and privacy invasion.

*Id.* § 2(10) and (12); *See also Mims*, 132 S. Ct. at 745.

19. The TCPA regulates, among other things, the use of automated telephone equipment, or "auto-dialers." Specifically, the plain language of section 227(b)(1)(A)(iii) prohibits the use of auto-dialers to make any call to a wireless number in the absence of an emergency or the prior express consent of the called party.

20. According to findings by the FCC, the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming

calls whether they pay in advance or after the minutes are used. *See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003).

21. On January 4, 2008, the FCC released a Declaratory Ruling wherein it confirmed that autodialed and prerecorded message calls to a wireless number by a creditor (or on behalf of a creditor) are permitted only if the calls are made with the "prior express consent" of the called party. *See In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991* ("FCC Declaratory Ruling"), 23 F.C.C.R. 559, 23 FCC Rcd. 559, 43 Communications Reg. (P&F) 877, 2008 WL 65485 (F.C.C.) (2008).

22. The FCC "emphasize[d] that prior express consent is deemed to be granted only if the wireless number was provided by the consumer to the creditor, and that such number was provided during the transaction that resulted in the debt owed." *See FCC Declaratory Ruling,* 23 F.C.C.R. at 564-65.

23. In the same Declaratory Ruling, the FCC emphasized that both the creditors and third-party debt collector may be held liable under the TCPA for debt collection calls. ("A creditor on whose behalf an autodialed or prerecorded message call is made to a wireless number bears the responsibility for any violation of the Commission's rules. Calls placed by a third party collector on behalf of that creditor are treated as if the creditor itself placed the call… A third party collector may also be liable for a violation of the Commission's rules.")

### Factual Allegations

24. Defendant's business is the collection of accounts receivables from consumers. Defendant uses a predictive dialer to make telephone calls to cellular telephone numbers, often without the prior express consent of the persons using those cellular telephone numbers. This practice violates the TCPA.

25. Defendants called Plaintiffs on a repeated basis after October 27, 2010. Calls were made to Plaintiffs' cell number 850-598-7867. The purpose for these calls was debt collection.

26. Defendant's records should show when Plaintiffs were called by Defendant.

27. Defendant placed automated calls to Plaintiffs' cell phones using an automatic telephone dialing system ("**ATDS**") "which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator; and to dial such numbers as specified by 47 U.S.C. § 227(a)(1)."

28. Defendant placed calls using predictive dialers ("**Predictive Dialers**"). The Predictive Dialers constitute an automatic telephone dialing system; they are capable of storing, producing, and dialing any telephone number, and are capable of storing, or producing, telephone numbers using a random or sequential number generator and dialing such telephone numbers. Further, no human manually entered Plaintiffs' cellular telephone numbers at issue when Defendant made the calls. Rather, the Predictive Dialer electronically dialed Plaintiffs' cellular telephones in an automated fashion. The

Predictive Dialers otherwise constitute an "automatic telephone dialing system" under the meaning of 47 U.S.C. § 227(a)(1).

29. When the calls connected, there was silence followed by an audible click from the receiver. After a significant pause, a live agent would come on the line. As such, the calls at issue were made using an automatic telephone dialing system, equipment having the capacity to dial Plaintiffs' numbers without human intervention.

30. The facts in the preceding paragraph indicate the calls were placed through an "automatic telephone dialing system" as defined in 47 U.S.C. § 227(a)(1).

31. On some of the calls to Plaintiffs Defendant left a message consisting of a prerecorded voice. Plaintiffs listened to the message and recognized that it was not a live person leaving the message but an automated voice recording.

32. The facts in the preceding paragraph indicate some calls were placed using an "artificial or prerecorded voice."

33. None of the calls at issue were placed by Defendant to Plaintiffs' cellular telephones were for "emergency purposes" as specified by the TCPA, 47 U.S.C. §227(b)(1)(A).

34. J. Siren is the subscriber on the account for his cellular telephone, including number 850-598-7867 and is charged for calls made to his cellular telephone via a monthly charge. J. Siren is/was the regular used of number 850-598-7867.

35. S. Siren is the subscriber on the account for her cellular telephone, including number 913-952-3156 and is charged for calls made to her cellular telephone via a monthly charge. S. Siren is/was the regular used of number 913-952-3156.

36. Plaintiffs have not provided Defendant with their cellular telephone numbers or permission to call their cellular telephone numbers.

37. The calls at issue in this lawsuit occurred within the applicable statute of limitations as tolled by the doctrine set forth in *American Pipe & Construction. Co. v. Utah*, 414 U.S. 538, 554, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974). The calls were made on or after October 27, 2010. Plaintiffs seek recovery for each of these calls.

38. As a result of aforementioned tenacious collection efforts, Plaintiffs were affected, both personally and individually, as he experienced an invasion of privacy, stress, anxiety, nervousness, hypertension, instability, worry, embarrassment, intimidation, and indignation.

## Legal Claims

**Count 1: Violation of the TCPA: Plaintiffs bring a cause of action for violations of the TCPA's provisions prohibiting auto-dialed and prerecorded message calls to cell phones**

39. Plaintiffs incorporate the allegations from all of the previous paragraphs as if fully set forth herein.

40. Defendant placed non-emergency telephone calls to Plaintiffs' cellular telephone number using an automatic telephone dialing system or prerecorded or artificial voice without Plaintiffs' prior express consent in violation 47 U.S.C. §227(b)(1)(A)(iii).

41. Plaintiffs are informed, believe and allege that Defendant's violations of the TCPA described above were done willfully and knowingly.

42. The willful and knowing nature of Defendant's conduct is exhibited in part by the following facts:

    a. Defendant is a large entity with access to legal advice through its own regulatory department and outside employment counsel, and there is no contemporaneous evidence that it determined that its conduct was lawful;

    b. Defendant knew or had reason to know that its conduct was inconsistent with published FCC guidance interpreting the TCPA and the plain language of the statute;

    c. Defendant knew that the Plaintiff had not consented to calls to his/her cell phone as in many cases Defendant only received Plaintiffs' cell phone from skip-tracing;

    d. Defendant knew that permission was required before Defendant could call any of the respective Plaintiffs' cell phone using an auto-dialer or a prerecorded voice; and

    e. Defendant was aware of the requirements of the TCPA, but choose to not to comply with those requirements in order to reduce its labor costs and increase its profits.

43. Plaintiffs are entitled to damages of $1,500 per violation pursuant to 47 U.S.C. §227(b)(3) because the violations were willful and knowing violations of the TCPA.

44. In the alternative Plaintiffs are entitled to $500 per violation if the violations were not willful and knowing violations.

## Relief Sought

45. Plaintiffs request the following relief:

    a. That Defendant be found liable under the TCPA and Plaintiffs be awarded statutory damages of $500 for each negligent violation of the TCPA, and $1,500 for each willful/knowing violation of the TCPA with respect to that individual Plaintiff; and

    b. Plaintiffs be granted other relief as is just and equitable under the circumstances.

**Plaintiffs request a jury trial as to all claims of the complaint so triable.**

**Respectfully submitted,**    By:   */s/ Chris R. Miltenberger*
Chris R. Miltenberger
Texas Bar Number: 14171200
Member, Northern District of Florida

**The Law Office of Chris R. Miltenberger, PLLC**

1340 N. White Chapel, Suite 100
Southlake, Texas 76092-4322
817-416-5060 (office)
817-416-5062 (fax)
chris@crmlawpractice.com

**Attorney for Plaintiffs**